UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TIERRA COX,<br><br>Plaintiff,<br><br>v.<br><br>SAM'S EAST, INC.,<br><br>Defendant. | CAUSE NO. 2:25-cv-26 |

## OPINION AND ORDER

Defendant Sam's East, Inc. seeks summary judgment on the claim of malicious prosecution brought against it by Tierra Cox. [DE 20.] Because it is clear that there is insufficient evidence to support a claim of malicious prosecution, the motion for summary judgment will be granted.

### Background

On February 20, 2019, Tierra Cox, an Illinois resident, was on a trip to Indiana accompanied by Tremaine Wisinger and Denise Franklin. [DE 26, ¶¶ 14 and 8.] Wisinger is Cox's brother, and Franklin is one of her friends. *Id.* at ¶ 10-11. Cox was driving a van with Franklin in the front passenger seat and Wisinger in the back. *Id.* at ¶ 15. At some point along their way, Wisinger asked Cox to stop at a Sam's Club in Hobart. *Id.* at ¶ 16; DE 21-2. Cox parked the van at the Sam's Club, and Wisinger got out. [DE 26 at ¶ 17.] Cox then left the parking lot to get food, and when she came back, she parked the van directly in front of the Sam's Club. *Id.* at ¶ 18.

It is undisputed that Wisinger came out of the Sam's Club with some products, placed them in the car, and Cox began driving away. *Id.* at ¶ 20. Because there was a criminal case ultimately filed relating to what happened that day, there is a probable cause affidavit in the record. Here's what it reveals: a Sam's Club employee notified the police of someone dressed in a hoodie with the hood up buying a large number of items at the "Scan and Go" line. The employee suspected that theft was afoot. The products were being charged to the account of a person named "Laquanda Billingslea." [DE 21-2.] The man, later identified as Wisinger, hot-footed it out of the store with the products in tow. *Id.* According to the affidavit, the employee also related that Wisinger jumped into the back of the car, and that the car sped away while the rear door was still open. *Id.* Cox disputes this characterization of her driving. In any event, an officer arrived in the parking lot around the same time and actually witnessed the van driving erratically through the parking lot at a high rate of speed with its headlights off, cutting off another vehicle, and going over a curb. *Id.* at 3, 5. All of which prompted the officer to pull the car over and arrest Cox, Franklin, and Wisinger. *Id.* The police found four cell phones in Franklin's purse, as well as most of the products Wisinger left the Sam's Club with. *Id.*

All three were taken to the police station for questioning, and Cox and Franklin were subsequently released. [DE 26, ¶ 34.] The police performed a scan on the phones in Franklin's possession, which revealed Sam's Club account information, emails, and passwords for *hundreds* of Sam's Club members. [DE 21-2.] Ms. Billingslea was later contacted by the authorities and told them that she was a Georgia resident and had not

known nor consented to the purchases at the Sam's Club in Hobart, Indiana. *Id.* Cox was later re-arrested in Chicago on a fugitive warrant. [DE 26, ¶ 35.]

Cox does not contest that, at the time of the traffic stop, someone in her car had committed a crime at the Sam's Club. *Id.* at ¶ 30. However, she asserts that she was not aware of it at the time. *Id.* The State of Indiana brought criminal charges against Cox for identity deception and forgery. [DE 5, ¶ 20.] However, at least against Cox, there was a large delay in the prosecution of the case. [DE 26-2.] Ultimately, in October of 2023, the State of Indiana moved to voluntarily dismiss the case against Cox, because "due to the passage of time, the State of Indiana cannot successfully prosecute this matter." [DE 26-2.] The state court judge granted the dismissal. *Id.*

Cox then brought this malicious prosecution case in state court, and it was later removed here. [DE 4.] Cox claims the Sam's Club employee who reported the ongoing crime and spoke with the police caused her to be prosecuted. She says a Sam's Club employee was speaking with the police when she was pulled over, and that the employee pointed toward her and her companions and said "yes." [DE 26, ¶¶ 24-25.] Cox never spoke with this Sam's Club employee. *Id.* at ¶ 26. She further argues that the Sam's Club employee misrepresented the events when reporting the crime, because, according to the police report, the employee told the police that Wisinger "jumped" into the car and that the rear passenger door was still open as the car "sped" away. [DE 21-2.] Cox asserts that Wisinger did not "jump" into the back of the car, that the rear passenger door was not open, and that she drove in a regular manner away from the store. [DE 26, 8.]

**Discussion**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

This case is not about relitigating the events at the Sam's Club in Hobart on February 20, 2019. Instead, this case is about the actions of Sam's Club employees that Cox argues led to her criminal prosecution by the State of Indiana. Sam's Club has moved for summary judgment on the one claim in this case: malicious prosecution.

"Under Indiana Law, 'the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (quoting *Golden Years Homestead, Inc. v. Buckland,* 557 F.3d 457, 462 (7th Cir.2009)). In this case, Cox has failed to present evidence satisfying each of these elements. What's more, the defendants have an air-tight defense; the statements made by the Sam's Club employee are protected by a qualified privilege under Indiana law.

Let's start with causation. The standard for a malicious prosecution claim is high when the claim is brought against a witness who reported the alleged crime and cooperated with the police investigation. There are a few reasons for this, one of which is that witnesses do not decide to prosecute; rather, as happened here, they generally report the conduct to the proper authorities who choose to prosecute the case or not based on their investigation. *See Conwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct. App. 1996) ("[N]one of the Big R defendants instituted or caused to be instituted a prosecution against Conwell. The prosecution was instituted by the prosecutor who made an independent determination of whether to pursue criminal charges after reviewing all of the information obtained by the Sheriff's Department's independent investigation.").

Multiple Indiana courts have granted summary judgment to witnesses who report potential criminal conduct or cooperate with police investigations of such conduct. For example, in *Bah v. Mac's Convenience Stores*, the plaintiff was a store manager suspected of theft by her employer, who reported its suspicions to the police. 37 N.E.3d 539 (Ind. Ct. App. 2015). The police and the local prosecutor's office investigated, which involved interviewing Bah's supervisor, and subsequently the prosecutor chose to charge Bah with theft. *Id.* Bah was found not guilty and sued her employer for malicious prosecution. *Id.* The Indiana Court of Appeals affirmed summary judgment in favor of the employer, finding that the employee-witness "did not institute or cause to be instituted the criminal action against Bah; the prosecutor did." *Id.* at 547.

Similarly, in *Ali v. Alliance Home Health Care, LLC*, a home healthcare worker was charged with theft based in part on information provided to the police by the healthcare worker's employer. 53 N.E.3d 420 (Ind. Ct. App. 2016). Following her acquittal, the healthcare worker sued her employer for malicious prosecution. *Id.* The Indiana Court of Appeals affirmed summary judgment for the defendant, stating that "in short, the prosecutor, not Appellees, initiated the action based on IMPD's investigation." *Id.* at 432.

The evidence in this case is particularly lacking in causation. First, I note that the evidence shows that nearly all of the Sam's Club employee's comments to the police involved what the employee witnessed *Wisinger* do—that he was acting suspicious in the store, scanning Billingslea's account, etc. While the evidence suggests the employee may have pointed out that Wisinger got into the car that Cox happened to be driving and gestured at them and said the word "yes," there is no evidence that the employee knew that Cox was the driver, nor that the employee told the police that Cox was involved in a crime, nor that the employee stated even generally that she believed the driver of the car was involved in a crime.

The police, not a Sam's Club employee, pulled over the vehicle and identified Cox as the driver. [DE 21-2, 3.] An investigation was carried out where the police and learned of what appeared to be a fraud scheme being perpetrated against Sam's Club and its members, and, as Cox admits, that a crime had been committed at the Sam's Club in Hobart that day. *Id.*; DE 26, ¶ 30. The prosecutor, after an investigation, chose to charge Cox for being involved in that crime. In short, this case falls squarely into the

category of cases like *Bah v. Mac's Convenience Stores* or *Ali v. Alliance Home Health Care, LLC* where it was found that the prosecutor, not a reporting witness, was the cause of the charges being filed.

There is also a lack of evidence on the critical element of malice. "[T]he element of malice may be inferred from a total lack of probable cause, from the failure to make a reasonable or suitable inquiry, and from a showing of personal animosity." *Glass v. Trump Indiana, Inc.*, 802 N.E.2d 461, 467 (Ind. Ct. App. 2004) (quoting *Kroger Food Stores, Inc. v. Clark,* 598 N.E.2d 1084, 1089 (Ind. Ct. App. 1992). The report made by the witnesses in this case was not at all unreasonable. They simply reported what they saw. Isn't that what we want from witnesses to criminal behavior? The Indiana Supreme Court thinks so. "Requiring citizens to evade civil liability only by first verifying their suspicions with certitude before reporting them to police raises other significant concerns, including vigilante justice and personal safety, in addition to the risk that leads will grow stale by the time citizens have sufficiently verified what they thought they saw." *Williams v. Tharp*, 914 N.E.2d 756, 765 (Ind. 2009). This is because Indiana courts seek to encourage "open communication between citizens and law enforcement, leaving *the task of investigating that information, and of deciding upon the appropriate response, to trained professionals*." *Id.* (emphasis added). A showing of malice by claiming a witness who merely reported suspicious activity failed to make a "reasonable or suitable inquiry" cuts against the general rule that citizens reporting to the police are not required to report with certitude. That is left up to the police and the prosecutors, not citizens calling the police while witnessing something they believe is suspicious.

Finally, on the issue of malice, any evidence of personal animosity is wholly absent from the record. It is undisputed that the Sam's Club employees did not know Cox personally, and that the one who spoke with the police at the scene never even spoke with Cox. There is simply no evidence that any Sam's Club employee acted in a way towards Cox that could be reasonably inferred as showing personal animosity. Courts have found a lack of personal animosity in cases with far more favorable evidence than that presented here. *Golden Years Homestead*, 557 F.3d at 463 (affirming summary judgment in malicious prosecution case and stating that "[r]aised voices and repeated door-slamming in order to induce a lock to malfunction suggest that the inspectors were overzealous, overbearing, and unprofessional, but not that they were motivated by personal animus.").

As for third element of a malicious prosecution claim—a lack of probable cause—that is also a nonstarter here. Probable cause to commence criminal proceedings exists "when a reasonable inquiry would induce a reasonably intelligent and prudent person to believe that the accused committed the crime charged." *Glass v. Trump Indiana, Inc.*, 802 N.E.2d 461, 467 (Ind. Ct. App. 2004). When there is a "judicial determination of probable cause in a criminal proceeding," Indiana courts treat that as "prima facie evidence of probable cause." *Id.* A plaintiff "may rebut such a prima facie case of probable cause by introducing evidence that shows the finding of probable cause was induced by false testimony, fraud, or other improper means[.]" *Id.* "When a judicial determination of probable cause has been made, the prima facie case cannot be overcome by a showing of a negligent failure to investigate thoroughly where there is

some factual basis for bringing a claim. More than mere negligence must be shown to rebut the prima facie case." *Id.* (quoting *Conwell*, 667 N.E.2d at 778).

There is no dispute that there was a judicial finding of probable cause, and Plaintiff makes no argument to the contrary. [DE 26, ¶ 34; DE 25, 4] Instead, Plaintiff argues, in a singular paragraph, that she has sufficiently rebutted the prima facie showing of probable cause by establishing that it was induced by false testimony. *Id.* It is true that if Cox *were* able to show that the finding of probable cause was induced by false testimony, it would not only rebut the *prima facie* evidence and satisfy this element but would be relevant to showing malice and causation. *Kroger*, 598 N.E.2d, at 1087-1090; *Glass*, 802 N.E.2d at 467. However, for this to be a successful argument, the false testimony by the reporting witness usually must be shown to be the "sole basis" or at least the "driving force" for the finding of probable cause. *Chalfant v. Lods*, 994 N.E.2d 740, 745 (Ind. Ct. App. 2013) (finding a dispute of material fact where the disputedly false "statements to the officers were the sole basis for the charges against Chalfant."); *Glass*, 802 N.E.2d at 467 (not finding a dispute of material fact where the employee's report to the police was not a "driving force" in "the Prosecutor's Office's decision to charge Appellants" and the record showed an "independent investigation.").

In this case, the supposed misrepresentations made by the employee to the police are actually trifles. Cox says, for example, that Wisinger got in the car normally as opposed to "jumping" into it as reported by the witness. And she says the rear passenger door did not remain open after Wisinger got in and she began driving away. [DE 26, 8.] These kinds of minor differences in characterization are not the type of

deliberate lies that make a malicious prosecution case. *Tharp*, 914 N.E.2d at 769 ("Whether Tharp's misperception was speculative, negligent, or even reckless, it was not so obviously mistaken to permit a reasonable inference that he lied.").

More importantly to the probable cause element is the fact that what the reporting witness told the police was not the sole basis or driving force for the probable cause determination. Far from it. The probable cause affidavit contains other relevant facts to finding probable cause not based on these disputed characterizations from the Sam's Club employee. For example, it identifies (as Cox admits) that she was driving the car that Wisinger got into with the illegally acquired goods. Second, evidence acquired in the car suggested that someone in the car had committed a crime, and Cox does not dispute that a crime was committed by someone in the car. Third, the fact that she drove away from the scene in a speedy and suspicious manner is not solely based on comments made by a Sam's Club employee. It was also observed by the responding police officer, who personally saw the van driving at a "high rate of speed" through the parking lot with its headlights off (despite it being dark), saw the van cut off another car, and went over a curb to get out of the lot. [DE 21-2, 3, 7-9.]

Where, as here, the reporting witness's disputed statements are not shown to be the sole basis for the probable cause finding, courts find that the plaintiff failed to rebut the prima facie showing of probable cause and failed to put a material fact in dispute. *Conwell*, 667 N.E.2d at 778-79 ("[T]he fact that Cappoli's statement regarding the K–Mart incident may have caused Big R to focus its attention on Conwell while he shopped in the store does not negate the other evidence supporting probable cause… The fact that

Conwell later presented evidence that the K–Mart incident may not have occurred is not material."); *Glass*, 802 N.E.2d at 467 ("The implication is that, in singling out Glass and Chantala for prosecution, Trump was motivated by its own financial self-interest. Whatever may be said of the plausibility and merits of this implication, it does not negate the considerable evidence supporting the finding of probable cause.").

In sum, Cox has failed to present sufficient evidence to defeat summary judgment on the probable cause element because the Sam's Club employees were not the only source upon which a probable cause finding was made. *Glass*, 802 N.E.2d at 467 (finding that it "it was not Trump that instituted or caused to be instituted a prosecution," rather it was the "independent investigation, conducted under the auspices of the Gaming Commission" that was assessed in its totality and found sufficient by the prosecutor); *Conwell*, 667 N.E.2d at 778 ("The prosecution was instituted by the prosecutor who made an independent determination of whether to pursue criminal charges after reviewing all of the information obtained by the Sheriff's Department's independent investigation.").

Finally, as I noted at the outset, this malicious prosecution claim fails for an additional, independent reason: the defense of qualified privilege. It is "well established that in Indiana, communications made to law enforcement to report criminal activity are qualifiedly privileged." *Williams*, 914 N.E.2d at 763 (quoting *Kelley v. Tanoos*, 865 N.E.2d 593, 600 (Ind. 2007)). This is a defense to civil liability. *Id.* "The purpose of the privilege is to enhance public safety by facilitating the investigation of suspected criminal activity." *Brown v. Indianapolis Housing Agency*, 971 N.E.2d 181, 185 (Ind. Ct.

App. 2012). However, a statement "may lose its privileged character upon a showing of abuse wherein: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Williams*, 914 N.E.2d at 763 (quoting *Bals v. Verduzco,* 600 N.E.2d 1353, 1356 (Ind. 1992)); *see also Brown*, 971 N.E.2d at 186 (applying qualified privilege to a malicious prosecution case and applying the same standard). The burden is on the defendant to show that its statements fall within the privilege. *Brown*, 971 N.E.2d at 185. If the defendant makes that showing, then the burden shifts to the plaintiff to show that the privilege has been abused in at least one of the three ways listed above. *Id.*

The qualified privilege applies to "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992). Generally, the privilege is "intended to encourage private citizens and victims not only to report crime, but also to assist law enforcement with investigating and apprehending individuals who engage in criminal activity." *Kelley*, 865 N.E.2d at 601. On this record, I have little trouble finding that the defendant carried its initial burden here, and Cox does not argue that it didn't. [DE 25, 3.] Thus, the burden shifts to Cox to show why any of these statements made by the reporting witness should lose their privileged status. She has failed to do so.

Once again, *Tharp* is the clincher on this point. In that case, the reporting witness (Tharp) thought that another person inside a store (Williams) had pulled out a gun while in the store. *Id.* at 760. Tharp told a passerby that he thought Williams had a gun, and the passerby called the police. *Id.* The police arrived at the scene and the employee told them that a man had come in with a gun, described the suspect, and gave the police Williams' license plate. During this, Tharp also falsely identified himself to the police, and left the scene despite the police asking him to stay while they talked to other employees. The police then went to Williams' home, and when Williams arrived there, they ordered him and the other passenger in his car to get out and get on their knees, handcuffed them, and detained them for over an hour. *Id.* They did not find a gun on Williams. *Id.* The defense of qualified privilege carried the day in granting summary judgment to the reporting witness because there was no evidence that the reporting witness knowingly lied. *Id*. at 768. And although *Tharp* was primarily a defamation case, the qualified privilege defense is equally applicable to malicious prosecution claims. *See e.g. Brown v. Indianapolis Housing Agency*, 971 N.E. 2d 181, 186 (Ind. App. 2012).

As in *Tharp*, there is simply no evidence in this case that the employees at Sam's Club knowingly lied about anything (if they lied at all) about what they reported seeing on the night in question. Cox has provided no basis for me to reasonably conclude that the Sam's Club employee's disputed statements were deliberate lies or were otherwise made with no grounds for the employee's belief in their truth. Whether Wisinger "jumped" into the back of the car or got in normally is a minor difference in perception and characterization of how he got into the car that does not defeat qualified privilege.

The same applies to whether the rear door of the car was closed *before* Cox began driving away or *after*. As for the statement that Cox was speeding away, the statement is not only the employee's perception of the events but is also corroborated by the report of the responding officer.

In sum, in light of the high standard for defeating qualified privilege and considering the Supreme Court of Indiana's decision in *Williams v. Tharp* and its progeny, I find that the statements made by the Sam's Club employee to the police benefit from qualified privilege and thus cannot form the basis of this claim.

**Conclusion**

For the reasons stated above, the motion for summary judgment [DE 20] is GRANTED.

SO ORDERED.

ENTERED: November 4, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT